DOWS *v.* SCHUH.

1. CORPORATIONS—SALES OF STOCK—BLUE-SKY LAW.
   It is not a violation of the "Blue-Sky law' (3 Comp. Laws 1915, § 11954) for each owner of stock in a corporation to sell his stock when not made in the course of continued and successive transactions of a similar nature.

2. APPEAL AND ERROR—FINDINGS OF COURT—REVIEW.
   Under 3 Comp. Laws 1915, § 12587, in a case tried without a jury, the Supreme Court may review only the question of whether the findings of fact of the trial judge are against the clear weight of the evidence.

3. SAME—EVIDENCE—SUFFICIENCY.
   Evidence *held,* to support the finding of the trial judge.

Error to Kent; McDonald, J. Submitted April 9, 1919. (Docket No. 22.) Decided May 29, 1919.

Assumpsit by John L. Dows, trustee, against Herman L. Schuh and others on a promissory note. Judgment for plaintiff. Defendants bring error. Affirmed.

*Charles G. Turner* (*William J. Landman,* of counsel), for appellants.

*L. J. Washburn,* for appellee.

The Differential Clock Company is an Illinois corporation. It made application to the Michigan securities commission for permission to sell its stock in this State. On May 9, 1917, the commission heard its application, and, acting under the provisions of section 8 of Act No. 46, Pub. Acts 1915 (3 Comp. Laws 1915, § 11952), required the company to deposit in escrow 11,500 shares of its common stock as one of the conditions of obtaining such permission. Some 19 persons, mostly residents of Grand Rapids, were at this time owners of stock of the company to the amount of $18,750 par value, which, it is to be inferred, they had purchased prior to the enactment of the act of 1915. They had not paid par for their stock. They were known as, and are called in the record, "the minority stockholders," and for some time had acted in concert. Prior to the time in question there had been negotiations between the majority and minority stockholders, and a letter appears in the record bearing date February 28, 1917, and said to be similar to one sent to each of the minority stockholders, offering to purchase their stock at the amount invested plus interest at six per cent. The management of the company (the majority stockholders) was unable to obtain sufficient stock to comply with the requirements of the commission, lacking some $7,000 or $7,100 of the required

amount. A meeting of the minority stockholders was held May 16, 1917. Many, but not all, of the minority stockholders were present; all of the stock certificates owned by the minority were in possession of those attending the meeting and all had been indorsed in blank, except one which was not so indorsed until the following day. The defendants and their attorney were also present. The situation and prospects of the company were first explained and the minority stockholders were requested to furnish sufficient of their stock to comply with the requirements of the commission. This they declined to do, and they also declined to sell the amount required. But it was finally agreed that they should sell their entire holdings at the amount they had paid for their stock, with interest. Two notes were executed by the defendants to John L. Dows, trustee; one for $6,634.50, due in three months, and the other for $5,723, due in six months, and all of the stock of the minority stockholders was turned over to Mr. Dows; $7,100 of it was deposited with the commission, and the receipt for it given to him, and the balance of the stock was retained by him. The first note was paid. This suit is brought on the second note. Plaintiff declared upon the common counts and set up a copy of the note. Defendants pleaded the general issue and gave notice thereunder. Their position as stated in their brief is as follows:

"The only question involved, is the failure of the consideration for the notes:

"(*a*) Because there was no delivery of the stock purchased.

"(*b*) Because of the inability of plaintiff to deliver the stock purchased.

"(*c*) Because of the illegal acts, in the sale, or offering for sale, of the stock in question by plaintiff and certain of the minority stockholders."

Elaborating (*a*) and (*b*) it is the claim of defendants that none of the stock for the payment of which

these notes were given has ever been delivered to them; that a portion has been deposited with the Michigan securities commission in escrow and cannot be withdrawn, except by complying with the condition of the escrow agreement, and that the receipt therefor is retained by plaintiff, and that the balance of the stock is still in his possession. Replying to this contention, it is the claim of the plaintiff and supported by the testimony offered by him, that the stock in escrow was placed there by defendants' attorney. That the stock was acquired by defendants for that purpose, that plaintiff signed the escrow agreement at their request, and that the receipt for such stock together with the balance of the stock is held by him as trustee by an agreement of all the parties that it should be so held until the notes were paid.

Elaborating (c) it is the contention of the defendants that all of the minority stockholders were not present at the meeting of May 16th; that Dows, one Leavenworth, one Ashton and Mrs. Green, represented different absent stockholders, made the sale of the stock for them; that they were "dealers" within the meaning of the act referred to, commonly called the "Blue Sky law," and that they had no license from the commission to act as dealers and that the sale of the stock had not at that time been authorized by the commission. Defendants therefore insist that such sale was in violation of the "Blue Sky law," and, being in violation of a penal statute, is void, and defendants may not be required to pay the note given in payment of the consideration of such void agreement and may also recover the amount already paid. Replying to this contention, it is the claim of the plaintiff that neither he nor the persons named were dealers or that they made the sale for the owners of the stock. It is his claim, and there is testimony to support it, that the minority stockholders were then and had been

for some time acting in concert with reference to their holdings; that all the stock was present at this meeting and was sent in to be handled as the meeting might decide was best for all concerned; that he was made trustee in the note to facilitate payment for the stock, solely for its collection and the disbursement of the proceeds among the 19 minority stockholders; and that he held the stock as trustee until the notes were paid, and was then to deliver it to defendants. He claims that whatever action he took had reference to his own stock and that he was not a broker, dealer in stocks, or agent for the absent stockholders and that his trusteeship had solely to do with the collection of the notes and the disbursements of the proceeds and did not concern the sale. The case was tried without a jury and written findings of fact were filed Among the pertinent findings of fact and those particularly assailed are the following:

"4. * * * That it was understood and agreed the defendants and the minority stockholders present at the meeting that John L. Dows was to act as such trustee and was to retain in his possession until the notes were paid all the shares of the stock so sold to the defendants except the seventy shares required to be deposited with the securities commission.

"5. That John L. Dows did not sell directly or indirectly any stock of the minority stockholders except his own, and that he was not appointed trustee by them at the meeting in question or prior thereto for the purpose of selling their stock or to act for them in any capacity whatever. That he actively participated in the negotiations between the parties only in the sale of his own stock in conjunction with others who had common interests; and that the stock which was sold at this meeting for which the note in question was given, was sold by the individuals present as owners of the stock held by them.

"6. That as to the stockholders who were not present at this meeting and whose stock was included as part of the consideration of these notes, I find that

their shares of stock were sent to this meeting to be disposed of in any manner that the majority of the stockholders present might favor, there having been a common understanding that the minority stockholders would not dispose of their stock unless all of them joined in such disposition."

FELLOWS, J. (*after stating the facts.*)  It is insisted by the defendants that the findings of fact above quoted are against the clear weight of the evidence. Unless defendants are correct in this contention we cannot consider the questions ably discussed by counsel in their brief.  If the stock in question was deposited in escrow with the securities commission by the defendants themselves or through their attorney and the receipt therefor was turned over to the plaintiff with an agreement between all the parties that he should hold it, together with the balance of the stock, as trustee until the notes were paid, defendants cannot complain because they did not receive the stock before such payment.  Nor was it a violation of the "Blue Sky law" for each owner to sell his stock when not made in the course of continued and successive transactions of a similar nature.  Section 11954, 3 Comp. Laws 1915.

This court may only review the question of whether the findings of fact of the trial judge are against the clear weight of the evidence.  Section 15, chap. 18, Act No. 314, Pub. Acts 1915 (3 Comp. Laws 1915, § 12587). A careful reading of this record containing the evidence taken upon the trial satisfies us that not only are the findings not against the clear weight of the evidence but that they are sustained by the clear preponderance of the proofs.  Plaintiff and several of the minority stockholders present at the meeting sustain his version of what occurred.  Three of the defendants give testimony contradictory in some particulars. Defendants' attorney, who was present at the meeting

of May 16, 1917, was not called as a witness, nor was defendant Schuh, who left Grand Rapids on a business trip shortly before the trial, and who at one time was the manager of the company. It would profit no one to set out in detail the testimony in the record. Suffice to say that the testimony given by plaintiff and in his behalf preponderates that given by the defendants and supports the findings.

The findings support the judgment, which is affirmed.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred.