## Standard Drilling Company v. Slate, et al.

(Decided November 25, 1924.)

### Appeal from Warren Circuit Court.

1. Corporations—Before Directors Elected, Signers of Articles of Incorporation May Obtain Subscriptions to Stock and Perfect Organization.—Under Kentucky Statutes, sections 541-543, before directors are elected, signers of articles may obtain necessary subscriptions to stock and perfect organization, but must not transact business with persons other than stockholders until at least fifty per cent of capital stock is in good faith subscribed.

2. Corporations—Incorporators have Authority to Contract with Promoter for Sale of Stock.—Incorporators of corporation having authority to take steps to obtain necessary subscriptions to stock were authorized to contract with promoter to sell stock.

3. Corporations—Incorporators Not Responsible for Errors of Judgment.—Incorporators of corporation, like other trustees, must exercise ordinary care, but are not responsible for errors of judgment in contracting with promoter for sale of stock where they exercised ordinary care and judgment.

4. Corporations—Promoter May Recover for Services from Corporation.—Promoters may recover from corporation for their services.

5. Corporations—Promoter Contracting with Directors to Sell Stock Could Thereafter Employ Directors to Assist Him.—Where directors of corporation made contract with promoter to sell stock, promoter could employ directors to assist him; their assistance *not being contemplated in* original contract.

BELL & CORN for appellant.

THOMAS, THOMAS & LOGAN and GAINES & GARDNER for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

In the spring of 1920 E. S. Bell, of Chicago, came to Bowling Green. There J. M. Slate, L. D. Powell, J. K. White and he conceived the idea of organizing a corporation to drill oil wells, Slate, Powell and White agreeing to be promoters and Bell undertaking to act in selling the stock. On April 23rd Slate, Powell and White signed and filed articles incorporating the Standard Drilling Company, the capital stock to be $25,000.00, divided into 2,500 shares of the par value of $10.00 each. It was also provided in the articles that the affairs of the corporation should be conducted by a board of directors of not less than three nor more than five, who should be elected at a meeting of the stockholders to be held in Bowling Green at a certain place on Wednesday, April 27, 1920, at 10:30 a. m.

Bell had been obtaining subscriptions for the stock and at the time indicated, White, Powell and Slate met and elected themselves, Dr. J. W. Grubbs and H. L. Hendrick as directors. Hendrick declined to serve. The other directors met on May 5th and authorized the president and secretary to make a contract with E. S. Bell for the sale of the stock of the corporation. On the same day the contract was executed by which the corporation agreed to pay Bell for selling the stock 25% of the amount received until $14,000.00 of the stock was sold, and after this the commission should be 20% until all the stock was sold. At the time that this contract was made Bell, acting under the agreement made between him and the promoters and in anticipation of the contract to be made by the directors, had sold $8,500.00 of the stock, which had been paid for in whole or in part. After the contract was made Bell continued to sell the stock until he had sold about $17,000.00 worth of it and commissions were paid him by the directors as provided in the contract. White, Grubbs and Slate acted as subagents for Bell in selling some of the stock after May 5th and he paid them for their services 80% of the commission which he received on these subscriptions, amounting to $230.00 paid White, $780.00 paid Dr. Grubbs and $150.00 paid Slate.

In January, 1921, a new set of directors was elected, and on January 21, 1922, this action was filed by the Standard Drilling Company v. Slate, Grubbs, Powell and White to recover of them personally $2,125.00, being the

commission paid Bell on the stock subscribed before May 5th; also to recover of Slate, White and Grubbs the amounts paid to each of them afterwards by Bell out of his commissions on the subscriptions subsequently obtained. On final hearing the circuit court dismissed the petition. The plaintiff appeals.

It is insisted that all the stockholders were not given notice of the meeting at which the directors were elected, but the time and place of this meeting were fixed in the articles and each stockholder thus had notice of it.

The directors are not liable for the $2,125.00 paid Bell. By section 541, Kentucky Statutes, until the directors are elected the signers of the articles of incorporation shall have the direction of the affairs of the organization of the corporation and may take such steps as are proper to obtain necessary subscriptions to stock and to perfect the organization of the corporation. By section 542, the corporation shall be deemed to be organized for the purpose of promoting or carrying on the business for which it was created when the articles are filed and recorded as provided by the statute. By section 543, at least 50% of the capital stock shall be in good faith subscribed before the corporation shall be authorized to transact business with persons other than the stockholders.

Reading these sections together, the meaning reasonably is that before the directors are elected the signers of the articles may take such steps as are proper to obtain the necessary subscriptions to stock and to perfect the organization of the corporation, but that they must not transact any other business than this with other persons than stockholders until at least 50% of the capital stock of the corporation shall be in good faith subscribed.

If the incorporators had authority to take such steps as were proper to obtain the necessary subscriptions to stock, they had authority to make an arrangement with Bell for this purpose. In 7 R. C. L. 473, the rule as to the liability of directors is thus stated:

"The directors of a corporation are bound to care for its property and manage its affairs in good faith, and for a violation of these duties resulting in waste of its assets or injury to the property they are liable to account the same as other trustees."

Like other trustees they must exercise ordinary care, but they are not responsible for errors of judg-

ment where they exercise ordinary care and judgment. There is nothing in the record to show that the directors did not act in perfect good faith. They were stockholders in the company themselves and were asking their friends to go in with them. The written contract with Bell simply embodied the previous parol agreement, which was that he should have a commission on all the stock he sold. The record shows that the commission paid was reasonable. The stock was in fact subscribed through Bell's efforts. There is a conflict of authority as to the right of promoters to recover from the corporation for their services, but in Kentucky the right to recover has been sustained in Farmers Bank v. Smith, 105 Ky. 816. See 7 R. C. L. 74-75. If it should be now held that the directors paid something for which the corporation was not liable, plainly the directors should not be responsible for this error of judgment where they acted in good faith.

After the directors had made the contract with Bell and the company was organized, he had a right to employ any of them to assist him in selling the stock. This was not contemplated in the original contract; it was a subsequent arrangement, growing out of the fact that these men could make some sales better than Bell. There is nothing in the record to indicate that there was any fraud in this matter or that Bell was paid anything more than was coming to him, and it was entirely immaterial to the corporation what Bell did with the money after it was paid to him. Of course it is always advisable that the directors of corporations should not, even afterwards, enter into an arrangement by which they derive any profit from a contract which they have made. But there being no bad faith and nothing improper done, no reason is perceived why they should be required to pay to the corporation the money Bell paid them out of his commissions.

It appears that in the articles of incorporation the signers each stated that he subscribed for 425 shares of the capital stock. It is also true that the minutes of the stockholders' meeting of April 27th show the same facts, and that in fact each of them only took and paid for 50 shares of stock. But this suit is not an action to recover on the subscription to the stock. These facts only appear incidentally in the proof.

Judgment affirmed.