## Smith v. Crawford.

(Decided March 12, 1929.)

SPEIGHT & RYAN for appellant.

COLEMAN & LANCASTER for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

This record raises an interesting question of first impression respecting liability under section 18 of the Blue Sky Law of Kentucky (Acts 1926, c. 76), approved March 23, 1926 (Ky. Stats. Supp. 1928, secs. 883e1-883e36). T. L. Smith instituted an action against M. G. Crawford to recover $250, which he had paid for stock in a corporation, on the ground that the corporation had sold the stock through the agency of Crawford without compliance with the law. A recovery was denied, and Smith has entered a motion for an appeal.

The Rotary Stores Corporation was incorporated in Kentucky by Crawford and three other gentlemen with an authorized capital stock of $50,000, divided in shares of the par value of $50 each. More than one-half of the

authorized capital stock was subscribed in the articles of incorporation by the four incorporators. These subscriptions were to be paid for by the assignment of rights to the use and sale of a patented rotary conveyer adapted for chain stores. It was the intention to sell enough of the treasury stock to operate a chain of stores. The corporation sold a small amount of stock, realizing therefrom a little less than $8,000. Smith was the manager of one of the company stores and purchased 5 shares of stock, for which he paid $250. Crawford had some agency in the sale of this stock, but may not have been the procuring cause of it. He was president of the corporation, and as such signed the stock certificate issued to Smith. He made no profit or commission on the sale. He was acting solely in the interest of the company in which he had faith. The corporation failed, however, and all the stock became worthless. Smith based his claim against Crawford upon the two grounds of violation of the Blue Sky Law and deceit.

We have no difficulty in sustaining the finding of facts and conclusion of law announced by the lower court that Smith failed to sustain his charge in so far as any deceit was concerned. Smith desired a position with the company, and bought the stock for motives of his own, uninfluenced by any urging or solicitation by Crawford. The record shows that Crawford is a man of character and standing, and made no representations respecting the stock that he did not believe, and have excellent reasons for believing, to be sound. Smith got a position with the company, as did his wife, and worked for it as long as it succeeded, without complaint that he had been victimized. His action is plainly an afterthought, prompted by the sting of his loss.

But the remedy asserted by virtue of the statute presents a more difficult question. The section of the act respecting remedies is as follows:

"Sec. 883e-18. Every sale or contract for the sale made in violation of any of the provisions of this act shall be voidable at the election of the purchaser and the person making such sale or contract for sale and every director, officer or agent of or for such seller who shall have participated or aided in any way in making such sale shall be jointly and severally liable to such purchaser in any action at law in any court of competent jurisdiction in the county

where the contract was made or in which the plaintiff resides, upon tender to the seller of the securities sold or of the contract made for the full amount paid by such purchaser.

"Provided, that no action shall be brought for the recovery of the purchase price, after two years from the date of such sale or contract for sale; and provided, further, that no purchaser otherwise entitled shall claim or have the benefit of this section who shall have refused or failed within a reasonable time to accept the voluntary offer of the seller to take back the security in question and to refund the full amount paid by such purchaser together with interest for such amount for the period from the date of payment by such purchaser down to the date of repayment, such interest to be computed:

"(a) In case such securities consist of interest bearing obligations at the same rate as provided in such obligations; and

"(b) In case such securities consist of other than interest bearing obligations at the rate of six per centum per annum; less, in every case, the amount of any income from said securities that may have been received by such purchaser."

Crawford was an officer and director of the corporation, and even if he had not participated in negotiating the particular sale to Smith, his official relation to the corporation and his signing the stock certificate rendered him liable if the stock was sold in violation of any provision of the law.

It is insisted that the sale was not in violation of the statute because it was within the exemptions from its operation provided by subsection (i) of section 3 (Ky. Stats., Supp. 1928, sec. 883e3, subsec. (i), and subsection (c) of section 4 of the act (Ky. Stats., Supp. 1928, sec. 883e4, subsec. (c). The contention compels a construction of the two provisions mentioned. Subsection (i) of section 3 reads:

"Fifty per cent. (50%) of the capital stock first issued by a corporation organized under the laws of this state for the purpose of doing business in this state, to enable it to transact business under section 543 of the Kentucky Statutes where no expense in excess of one per cent. of the proceeds from the sale of its capital stock so issued is incurred, and no com-

mission, compensation or remuneration is paid or given for or in connection with the sale or disposition of such capital stock, and no part of the issue so disposed of is issued directly or indirectly in payment for patents, services, good will, trade marks, leases, copyrights, processes, formulae, or other intangible assets. The president and secretary of the corporation shall, prior to such disposal, file with the commissioner a written verified statement setting forth the existence of the above facts, and that the corporation is formed for the purpose of doing business in this state."

It is argued that it is not a violation of the statute to sell 50 per cent. of the authorized capital stock first issued by the corporation, and that, as one-half of the stock was not sold on the market, but issued to some of the incorporators for patent rights, the corporation was free to sell for cash the remaining half, provided "no expense in excess of one per cent. of the proceeds from the sale of its capital stock so issued be incurred, and no commissions, compensation or remuneration be paid or given in connection therewith, and no part of it be issued directly or indirectly in payment for patents," or other intangible assets mentioned in the exception. But we are not able to deduce from the terms of the law any such meaning. Section 543 of the Statutes provides that at least 50 per cent. of the capital stock of each corporation shall be in good faith subscribed before it shall be authorized to transact any business with persons other than its stockholders. If the articles of incorporation contain subscriptions for one-half the capital stock authorized, the company is then authorized to do business. But the subscriptions must be made in good faith and with the intention of paying therefor in cash or its equivalent. A signer of the articles of incorporation is liable for the amount of his subscription. If one-half the stock is not subscribed in the articles of incorporation the incorporators must obtain subscriptions for that amount as a prerequisite to the right of the corporation to do business as such, as specified in section 543 of the Statutes. Standard Drilling Co. v. Slate, 205 Ky. 714, 266 S. W. 377.

It is the first 50 per cent. of the authorized capital stock issued that is exempted from the requirements of the Blue Sky Law. But, even so, in order to make the sale of the first 50 per cent. of the stock valid, the presi-

dent and secretary of the corporation are required, prior to disposing of the stock, to file with the commissioner of securities a written verified statement setting forth (1) that the stock issued is the first 50 per cent. thereof, and that subscriptions therefor are necessary to enable it to transact business under section 543, Kentucky Statutes; (2) that no commission, compensation, or remuneration has been paid or given for or in connection with the sale or disposition of such capital stock; and (3) that no part of the issue so disposed of is issued directly or indirectly in payment for patents, services, good will, trade-marks, leases, copyrights, processes, formulæ, or other intangible assets.

If the corporation in question had applied to the securities commissioner, he could not have authorized the issuance of the first 50 per cent. of the capital stock to those who had subscribed therefor in the articles of incorporation in so far as it was to be paid for by patents. The exemption does not apply at all to the second 50 per cent. of the authorized capital stock, and, in order to sell the second one-half of the authorized capital stock lawfully, compliance with the act is essential. It is apparent, therefore, that the stock sold to Smith was not exempt from the requirements of the Blue Sky Law. It appears that it was a portion of the 50 per cent. of the stock not subscribed for in the articles of incorporation, and therefore plainly without the terms of the exemption.

Subsection (c) of section 4 is as follows:

"An isolated transaction in which any security is bought, sold, offered for sale, subscription or delivery by the owner thereof, or by his representative for the owner's account, such purchase, sale or offer for sale, subscription or delivery not being made in the course of repeated and successive transactions of a like character by such owner, or on his account by such representative, and such owner or representative not being the underwriter of such security."

It will be observed that this exemption does not relate to sales by the corporation of its own capital stock. It exempts transactions by stockholders in which individual stock may be sold in isolated transactions, when the seller is not bound as an underwriter of the security. Crawford did not sell his individual stock to Smith. If a person in repeated and successive transactions should

acquire and sell stock so as to make him a dealer therein, he would come under other provisions of the act, but this particular provision was intended to exempt an individual owner from complying with the act when all that he desired was to dispose of corporate stock which he owned. Cf. Edward v. Ioor, 205 Mich. 617, 172 N. W. 620, 15 A. L. R. 256. We see no possible ground for applying this latter provision to the transaction in question. It appearing, therefore, that the sale of the stock to Smith was not exempt by any provision of the act, but was made by the corporation without complying with the statute, the liability provided by section 18 of the act was incurred.

The circuit court erred in denying recovery to the plaintiff, and it will be necessary to grant the appeal and reverse the judgment, with instructions to enter a judgment for the appellant, in accordance with the statute, for the amount paid for the stock, together with interest on such amount from the date of payment of the purchase price, computed in accordance with section 18 of the act.

Appeal granted. Judgment reversed.