# F. J. MEEK v. STATE.

No. A-8484.   March 18, 1933.
Rehearing Denied June 9, 1933.
(22 Pac. [2d] 933.)

416

Robert Burns, for plaintiff in error.

J. Berry King, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for the State.

CHAPPELL, J. Plaintiff in error, hereinafter called defendant, was convicted in the district court of Osage county of the sale of three hundred shares of the capital stock of the Globe Casualty Company of Oklahoma City, which stock had not been approved for sale by the Oklahoma Securities Commission, and his punishment fixed by the court at a fine of $1,000 and imprisonment in the state penitentiary for a period of two years.

Defendant acted as his own counsel in the trial court, but did not take the witness stand and offered no evidence in his behalf.

No issue of fact is presented by the petition in error; defendant seeking to reverse the case purely upon questions of law.

It is first contended chapter 24, article 11, Session Laws of 1931, is a revenue raising measure, as defined by the Constitution and laws of Oklahoma, and that the same is unconstitutional, for the reason that it was not introduced and enacted as required by section 33, article 5, of the Constitution.

The state in its brief says:

"We readily admit that if said act should be held to be a revenue measure the same is unconstitutional, as it was introduced in the Senate and also was enacted in less than five days prior to the adjournment of the Legislature.

However, we cannot concede that the act constitutes a revenue measure."

The following is the title to chapter 24, article 11, supra:

"An' act to prevent fraud in the sale of stock, bonds or other securities defined in this act, sold or offered for sale within the state of Oklahoma; to regulate and supervise the sale thereof; creating a Commission to be known as the Oklahoma Securities Commission, and providing for certain employees and fixing their salaries and making an appropriation therefor; prescribing the powers and duties of certain officers and employees; defining 'securities' and certain other terms used in this act; requiring the registration of stocks, bonds and other securities with certain exceptions; requiring the registration of persons selling or offering for sale stocks, bonds or other securities; fixing certain fees to be charged; providing for service of notice, process or pleading in any suit, proceeding or action growing out of the violation of any provision of this act, and consent therefor; providing that sales made in violation of any of the provisions of this act shall be voidable at the election of the purchaser; providing penalties for violations of any provisions of this act; providing for an appeal by any person who may be dissatisfied with any order or ruling made pursuant to this act, except as provided therein; repealing article 62, chapter 6, Comp. Okla. Stat. 1921, subject to the exceptions and limitations prescribed, and all laws and clauses of laws in conflict with this act; providing punishment for violations of this act."

The burden is on defendant to establish his contention, and the alleged unconstitutionality must be clearly established, except in cases so clear as to be free from doubt.

Courts will not declare a statute unconstitutional except in cases so clear as to be free from doubt. Key v. City of Ardmore, 30 Okla. Cr. 8, 234 Pac. 793; Ex parte

Fuller, 31 Okla. Cr. 289, 238 Pac. 512; Brown v. State, 47 Okla. Cr. 169, 286 Pac. 911; Smith v. State, 47 Okla. Cr. 184, 287 Pac. 835; Pruitt v. State, 47 Okla. Cr. 334, 288 Pac. 390; Dies v. Bank of Commerce, 100 Okla. 205, 229 Pac. 474; Ryan v. State ex rel. Fulfs, 102 Okla. 168, 228 Pac. 521; Spann v. State ex rel. McClain County Free Fair Assn, 152 Okla. 60, 3 Pac. (2d) 861.

Chapter 24, article 11, supra, was enacted to take the place of article 62, chapter 6, C. O. S. 1921 (section 2270 et seq.) Apparently the purpose of the law and the intention of the Legislature in enacting the same was identical with that inspiring the adoption of the original act by the 1919 Legislature. The old law originated in the Senate, as Senate Bill 135, and contained provisions for the collection of fees, although different in amount from that provided in chapter 24, article 11. In discussing the law in Hornaday v. State, 21 Okla. Cr. 354, 208 Pac. 228, 230, this court said:

"The purpose of this statute, as gathered from the title, considered together with the context of the act, appears to be two-fold: First, to prevent stockholders and promoters from perpetrating frauds and impositions on unsuspecting investors in hazardous undertakings; second, to protect credulous and incompetent persons from their own inclinations to speculate in hazardous enterprises, entered into on their own account or on the advice of friends, though not brought about by interested promoters or stock brokers.

"The objects, then, are to prevent fraud and unfair dealing in securities, as well as to prevent honest people, free from sinister influences, from investing in uncertain, ephemeral, 'get-rich-quick' stocks and securities. In other words, it is a statute designed in part to protect credulous persons against their own inherent weakness—a weakness akin to the gambler's hope of winning a prize. We think it is now well settled that both of these objects, within

constitutional bounds, properly come within regulations prescribed by the police power of the state."

This court, in Groskins v. State, 52 Okla. Cr. 197, 4 Pac. (2d) 117, said:

"Chapter 49, Session Laws 1919 (article 62, chap. 6, Comp. St. 1921 [sections 2270-2285]), is not unconstitutional as being in excess of the police power of the state, but is a proper exercise of the police power in an attempt to protect the credulous and incompetent citizens of the state from frauds and impositions by the sale to them of 'speculative securities' in fraudulent or hazardous undertakings."

There have been many decisions of the Supreme Court of Oklahoma upholding legislative acts providing for the collection of fees, or which in their operation would incidentally be productive of more or less revenue, and which have been attacked upon the same ground advanced by defendant. Gillespie v. First National Bank, 20 Okla. Cr. 768, 772, 95 Pac. 220, holding an act providing for discovery and assessment of unlisted property not to be a bill for raising revenue which must originate in the Senate. Cornelius v. State ex rel. Cruce, 40 Okla. 733, 140 Pac. 1187, considering chapter 246, Session Laws 1913, providing for the mortgage registration tax. Trustees' Executors' & Securities Ins. Corp. v. Hooton, 53 Okla. 530, 157 Pac. 293, L. R. A. 1916E, 602, considering the same act. Lusk v. Ryan, 69 Okla. 165, 171 Pac. 323, considering section 7, art. 1, chapter 240, Session Laws of 1913, relative to recovery of illegal taxes. Ryan v. State ex rel. Fulfs, 102 Okla. 168, 228 Pac. 521, passing on chapter 61, Session Laws 1923-24, relating to tax refunds. Ex parte Tindall, 102 Okla. 192, 229 Pac. 125, passing on chapter 113, Session Laws 1923, motor vehicle tax. In re Lee, 64 Okla. 310, 168 Pac. 53, 57 L. R. A. 1918B, 144,

passing on chapter 87, Session Laws 1915, providing for the appointment of Supreme Court commission and increasing the cost deposit to be collected by the Clerk of the Supreme Court.

In the last-mentioned case, the act under consideration had originated in the Senate. It was contended that this was a revenue measure, and therefore unconstitutional. The court said:

"It is finally claimed that the act of 1915, having originated in the Senate, is invalid because it is a revenue measure, while the Constitution provides in section 33, art. 5 (Williams', § 95) : 'All bills for raising revenue shall originate in the House of Representatives.' From what has been said in the discussion of the first objection to the statute, it prescribes a fee to the public for services rendered by their officers, and is not exacted for revenue, but as compensation. An act prescribing such fees is not a revenue measure within the meaning of the Constitution."

In re Ambler, 11 Okla. Cr. 449, 148 Pac. 1061, this court said:

"A statute enacted within the reasonable exercise of the police power of the state may impose reasonable fees, and the imposition of such fees in no manner changes such law from a police regulation to a revenue measure. Such fees are not required to be based on the cost of the enforcement of the law or the issuance of permits thereunder."

Revenue laws are those laws only whose principal object is the raising of revenue, and not those under which revenue may incidentally arise.

Revenue bills are those that levy taxes in the strict sense of the word, and are not bills for other purposes which may incidentally create revenue. Anderson v. Rit-

terbusch, 22 Okla. 761, 68 Pac. 1002; Wallace v. Gassaway, 148 Okla. 265, 298 Pac. 867.

In the case of Colorado National Life Assurance Co. v. Clayton, Ins. Commissioner, 54 Colo. 256, 130 Pac. 330, 332, the Supreme Court of Colorado, construing a similar act, said:

"Revenue bills are those which have for their object the levying of taxes in the strict sense of the words. If the principal object is another purpose, the incidental production of revenue growing out of the enforcement of the act will not make it a bill for raising revenue."

It thus appears from the title of the act and from the authorities above cited that chapter 24, article 11, supra, is not a revenue raising measure, but is one whose primary purpose is to prevent fraud in the sale and disposition of stocks, bonds, and other securities sold and offered for sale within the state.

It is next contended that chapter 24, article 11, supra, violates section 56, article 5, of the Constitution, the particular objection being that, in addition to regulating the sale of stock and creating the officers and employees necessary to conduct the business of the department, it includes an appropriation to pay the commissioner, clerks, and expenses of operating the department, and is therefore void.

Section 56, article 5, of the Constitution, provides:

"The general appropriation bill shall embrace nothing but appropriations for the expenses of the executive, legislative, and judicial departments of the state, and for interest on the public debt. The salary of no officer or employee of the state, or any subdivision thereof, shall be increased in such bill, nor shall any appropriation be made therein for any such officer or employee, unless his em-

ployment and the amount of his salary, shall have been already provided for by law. All other appropriations shall be made by separate bills, each embracing but one subject."

This section provides first for the executive, legislative, and judicial departments and the interest on the public debt; second, forbids the increase of the salary of any officer or employee; and, third, forbids any appropriation for an office or employment not already provided for by law. These provisions are mandatory, and a general appropriation act, to be constitutional, must be within these provisions.

The Constitution by such action provides that "all other appropriations must be in separate bills, embracing but one subject."

Defendant contends that an appropriation cannot be made in the same bill which creates the office and defines the duties, but that the appropriation must be in the general appropriation bill or in a separate appropriation bill after the office is created.

Beginning with the first Legislature in 1907-08, and down to the present time, neither the legislative, executive, nor judicial departments of state have so construed section 56, article 5, supra, as evidenced by the following acts: Chapter 3, article 1, Session Laws 1907-08, creating a board of agriculture and making an appropriation; chapter 1, article 1, Session Laws 1907-08, empowering the Governor to employ accountants to audit the territorial accounts and making an appropriation; chapter 1, article 2, Session Laws of 1909; chapter 88, Session Laws of 1910-1911; chapter 37, Session Laws of 1913; chapter 18, Session Laws of 1915; chapter 115, Session Laws of 1917; chapter 169, Session Laws of 1917; chapter 170, Session

Laws of 1917; chapter 210, Session Laws of 1917; chapter 32, Session Laws of 1919; chapter 43, Session Laws of 1923; chapter 55, Session Laws of 1923; chapter 43, Session Laws of 1923-24; chapter 71, Session Laws of 1923-24; chapter 1, Session Laws of 1927; chapter 228, Session Laws of 1929; chapter 26, article 1, Session Laws of 1931.

Many other statutes could be cited, but these are sufficient to show the views of the Legislature and the Governor.

In re County Commissioners of the Counties Comprising Seventh Judicial District, 22 Okla. 435, 98 Pac. 557, that court had under consideration an act creating additional district judges, fixing their compensation and making an appropriation, and there said:

"Section 57, art. 5 (Bunn's Ed. § 130), of the Constitution of this state, ordaining that 'every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title,' is mandatory; but its requirements are not to be exactingly enforced, or in such a technical manner as to cripple legislation.

"The title of the act entitled 'An act to provide for the appointment of additional judges of the district courts of the state where same are found necessary; making an appropriation and declaring an emergency,' embraces but one subject, namely, 'the appointment of additional judges of the district courts of the state where same are found necessary,' the subsequent clause being referable, and so correlated to the subject expressed in the first clause in the title as a natural and legitimate complement to the subject therein expressed."

In the body of the opinion the court said:

"In order to determine whether or not two subjects are embraced in this title, it is necessary to ascertain whether the clause 'making an appropriation and declar-

ing an emergency' is comprehended by the first clause. It provides for the appointment of additional judges of the district courts of the state where same are found necessary. Could, under such title, an appropriation be made to pay the necessary and actual expenses of such judge incident to the performance of his duties outside of the district for which he was originally appointed? We think so."

In Bryan v. Menefee, 21 Okla. 1, 95 Pac. 471, that court said:

"Before provision can be made in the general appropriation bill for the compensation of any officer or employee in the executive, legislative, or judicial departments of the state, the office must first have been created and the salary or compensation fixed, or the employment authorized, and the compensation provided for either therein or in a separate bill."

In the body of the opinion, referring to section 56, article 5, supra, the court said:

"Under this provision the office or position of bookkeeper for the State Treasurer not having been created by the Constitution or laws now in force in the state of Oklahoma, no provision could be made to cover the compensation therefor in the general appropriation bill until such office shall have been created or such employment provided for by law, and the amount of salary or compensation likewise provided in such act, or in a separate act therefor."

Mr. Justice Williams, in syllabus 1 of the opinion, uses this significant language:

"Or the employment authorized, and the compensation provided for either therein or in a separate bill."

In Menefee, State Treasurer, v. Askew, State Game & Fish Warden, 25 Okla. 623, 107 Pac. 159, 27 L. R. A. (N. S.) 537, that court had under consideration an act

creating the department of game and fish, and providing for a warden and deputy game wardens, fixing their salaries and authorizing the payment of the same, and held that sections 9 and 10 of article 4 of such act |Laws 1909, c. 19), in connection with sections 3 and 13 of article 6, constituted a valid appropriation as to the salary of the game and fish warden and his necessary traveling expenses and the salaries of the deputy game and fish wardens, but held, however, that the act made no appropriation for a stenographer and for other expenses, for the reason that no definite sum was specified.

In 1915, the Montana Legislature passed an act called the "Farm Loan Act" (Laws 1915, c. 28), creating a department of farm loans, for the operation of such department, to make loans, character of property to be used as security, and, among numerous provisions, included an appropriation for administrative purposes.

In Hill v. Rae, 52 Mont. 378, 158 Pac. 826, 830, L. R. A. 1917A, 495, Ann. Cas. 1917E, 210, the constitutionality of this act was under attack, upon various grounds, including the contention made by the defendant in the case at bar. The Supreme Court of that state said:

"Nor do we think there was any violation of section 33, art. 5, which provides that appropriations, other than for the ordinary expenses of the legislative, executive, and judicial departments of the state, interest on the public debt, and for public schools, 'shall be made by separate bills, each embracing but one subject.' Counsel for appellant construes this to mean that appropriations for a special purpose shall in all cases be made by a bill containing nothing but the appropriation itself. Where the appropriation constitutes the entire purpose in view, this is doubtless correct; but it is not correct if the appropriation is a mere incident to a larger, but still single, subject of legislation. There is no violation of this pro-

vision where the Legislature establishes a bureau or commission, and appropriates funds for its inauguration or to carry out the objects for which it was created."

To the same effect is State ex rel. v. Turner, 37 N. D. 635, 164 N. W. 924.

Under the above authorities, there can be no doubt the Legislature of Oklahoma may in one act establish a department, provide for the employees, fix their compensation and duties, and appropriate the money for their maintenance and support, limited only that the appropriation cannot be a continuing one, but can only be for a period not exceeding two and one-half years.

It is next contended the act in question is discriminatory, and therefore void. No decisions are cited in support of this contention. Counsel quotes certain provisions of the act, and argues that the same constitute discrimination. Almost identical provisions contained in the acts of other states have been sustained against such an attack. Kreutzer v. Westfahl, 187 Wis. 463, 204 N. W. 595; Hall v. Geiger-Jones Co., 242 U. S. 539, 37 S. Ct. 217, 61 L. Ed. 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643; Stewart v. Brady, 300 Ill. 425, 133 N. E. 310, 314.

In the latter case that court said: "Its classification of the objects of legislation is not required to be scientific, logical, or consistent, if it is reasonably adapted to secure the purpose for which it is intended and is not purely arbitrary. Legislative classification does not have to be so broad and comprehensive as to include all the evils which might by possibility be brought within its terms."

Under the broad powers conferred upon the Legislature by the Constitution of this state, it had authority to pass the act in question and to fix the classification provided for therein.

Defendant requested the court to instruct the jury that upon his theory of an isolated transaction he could not be convicted unless there had been repeated and successive transactions of like character. The court refused this requested instruction, but on his own motion told the jury (instruction No. 6), in substance, that any person who sold or offered for sale such stock or securities, the sale of which has not been approved or authorized by the Oklahoma Securities Commission, is guilty of a violation of the law. In this connection, however, the court further told the jury, the law does not prohibit the sale of any security or stock in an isolated transaction where the stock is sold by the owner thereof, or by his representative for the owner's account.

It would have been a proper defense if defendant had proved he was the bona fide owner of the stock charged to have been unlawfully sold in this state, and that the transaction was an isolated one, and that the sale was not made in the course of repeated and successive transactions of like character by him, or on his account by a representative, and he or his representative not being the underwriter of the security. The court properly instructed the jury upon that issue. In several states appellate courts have construed the same or similar provisions with reference to isolated transactions: People v. Clum, 213 Mich. 651, 182 N. W. 136, 15 A. L. R. 253; Edward v. Ioor, 205 Mich. 617, 172 N. W. 620, 15 A. L. R. 256; Dows v. Schuh, 206 Mich. 133, 172 N. W. 418; Commonwealth v. Johnson, 89 Pa. Super. Ct. 439; People v. Gillett, 243 Ill. App. 41; State v. Gerritson, 124 Or. 525, 265 Pac. 422; Smith v. Crawford, 228 Ky. 420, 15 S. W. (2d) 249.

When instruction No. 6 and the other instructions of the court are all considered together, it appears they correctly state the law, and were as favorable to the defendant as the law and the facts would warrant.

We have carefully considered all the questions raised by defendant, and, finding no fundamental error in the record, the cause is affirmed.

DAVENPORT, J., concurs. EDWARDS, P. J., absent, not participating.