## Kaye v. Sunbeam Quarries Co.

(Decided Feb. 26, 1935.)

BRUCE & BULLITT, JOHN E. TARRANT and WILLIAM B. LOCKHART for appellant.

ERNEST WOODWARD, ARTHUR GRAFTON, and WOODWARD, HAMILTON & HOBSON, VICTOR L. KELLEY and KELLEY & KELLEY for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

The Sunbeam Quarries Company, a corporation, has recovered judgment in the Jefferson circuit court against L. G. Kaye for $2,000 and interest on a written subscription for 20 shares of its capital stock of a par value of $100 each, and Kaye is appealing.

In the petition it is alleged that prior to September 17, 1928, appellant subscribed in writing for 20 shares of the capital stock of the corporation to be organized, and agreed to pay therefor $100 per share. Thereafter appellee duly incorporated under the laws of this state, and on October 22, 1928, made a call for payment of 25 per cent. of the subscription of its stock payable November 1 and the balance of 75 per cent. February 1, 1929. It tendered to appellant the 20 shares of stock subscribed for by him, but he refused to accept same or to pay for any part thereof.

In the first paragraph of his answer appellant pleaded no consideration for his subscription for stock in the proposed corporation. In a second paragraph he pleaded that on or about October 22, 1928, appellee first applied for a dealer's license under the "Blue Sky Law" of this state (Ky. Stat. sec. 883e-1 et seq.), and its stock was first registered and the dealer's license issued to it on October 29, 1928; that the president and secretary of the corporation did not, prior to the solicitation of Kaye, make a stock subscription or prior to his subscription file with the commissioner of securities a proper statement that the corporation was formed or to be formed for the purpose of doing business in Kentucky, or that no expenses in excess of 1 per cent. of the proceeds from the sale of the first 50 per cent. of its capital stock issued to enable it to do business in this

state had been or was to be incurred or that no commission or compensation or remuneration had been or was to be paid or given in connection with the sale or disposition of the capital stock, or that no part of the issue was to be directly or indirectly for patents, services, good will, trademarks, leases, copyrights, or other intangible assets; that, because of the failure to comply with the provisions of the "Blue Sky Law" in the respects indicated, prior to appellant's subscription for the capital stock, his subscription was and is voidable at his election; that in October, 1928, he elected to and declared his stock subscription to be void and unenforceable, and so notified appellee.

By reply, appellee alleged that on October 29, 1928, and immediately after its articles of incorporation had been executed and filed, it filed with the securities commissioner of Kentucky, form VII, general application, in which it set out under oath of its president and secretary that $77,500 of its capital stock had been subscribed to be issued November 21, 1928, an itemized statement of which was filed therewith and including the stock sold to appellant; that this statement showed that no commission was paid to any salesman, broker, or dealer, and that 100 per cent. of all the stock sold should go into the treasury of the corporation for plant erection or working capital, and on the same date it filed an application for dealer's license which was issued it by the commissioner of securities on October 28, 1928. Copies of the application and the original of the permits were filed with the reply. The allegations of the reply were controverted by rejoinder.

Thereafter appellant filed an amended answer which by agreement stands controverted of record, wherein it is alleged that prior to the time of the execution of the written application by appellant for his stock subscription T. J. Beam, who solicited the stock subscription, represented to and promised appellant that the corporation would elect either appellant or J. H. Waterfill a director of the corporation, and would, immediately after its organization, open and continue its main banking account with the Broadway Branch of the Citizens' Union National Bank, of which appellant was in charge; that each of these representations were material, and appellant would not have executed the subscription had he not believed that they would

be carried out; that after its organization the corporation failed and refused to carry out the representations and agreements or either of them.

At the close of all the evidence, the court, on motion of appellee, instructed the jury to render a verdict for it, and, pursuant to such directed verdict, the judgment appealed from was entered.

The evidence discloses that J. B. Beam and his son, T. J. Beam, of Bardstown, were the moving spirits in the organization of the corporation and in securing subscriptions to its stock; prior to the organization they spent a great deal of time visiting and inspecting quarries, determining the nature and character of machinery required, and in prospecting and core drilling in an effort to secure a proper site for their proposed operations. They finally decided on a site at Clermont in Bullitt county where several acres of land were purchased and on which the plant and the principal office of the corporation is located.

When demand was made upon appellant to pay his stock subscription, he refused upon the ground and for the reasons set out in his amended answer. For some reason the company delayed action for the enforcement of the stock subscription for about four years; however, it appears that the claim against appellant had been in the hands of an attorney for two years or more. It appears that appellant made no reference to nor sought to avoid his subscription because of appellee's alleged noncompliance with the "Blue Sky Law" until he filed his original answer. The evidence discloses that, after the articles of incorporation had been issued and filed, appellant attended a meeting of the stockholders at which officers and directors were elected, and the minutes of the meeting as well as other evidence show that it was upon his motion that a board of directors was elected that did not include either himself or Mr. Waterfill.

At the first meeting of the directors held immediately after their election, J. B. Beam was elected president and T. J. Beam secretary and treasurer of the company, and it was voted that they be issued 30 shares or $3,000 of the capital stock of the corporation for the real estate which they had acquired and convey-

ed to it and for expenses of prospecting and incorporating and for services rendered during the five months prior to October 9, 1928.

It is contended by appellant that the stock issued to the Beams for preorganization services amounted to $700. On the other hand, it is the contention of appellee that none of the $3,000 in stock referred to was issued for preorganization services, but that the entire amount, including the $700 which appellant claimed was for preorganization services, was in fact for the real estate and expenses of prospecting and incorporating. In the deposition of T. J. Beam, taken before the trial and as if under cross-examination, he testified in effect that the $700 about which there is a controversy was for services rendered by himself and J. B. Beam prior to the organization of the corporation; however, on the trial of the case, he indicated that this was not for services, but that their actual expenses in prospecting, visiting other plants, inspecting machinery, etc., amounted to more than this sum. Appellant has evidently abandoned his plea of no consideration, and the defenses pleaded in his amended answer, since these matters are not relied on as grounds for reversal; however, in passing it may be said that these defenses have not and cannot be sustained.

As grounds for reversal it is urged that appellant's stock subscription was procured in violation of the "Blue Sky Law," and therefore was voidable at his election and unenforceable, since he elected to avoid it. Counsel maintain that the stock subscription was procured in violation of the law because (1) the procuring of appellant's preorganization stock subscription constituted a sale of a security, Ky. Stat. sec. 883e-2; (2) that section 883e-5 of the Statutes prohibits the sale of a security unless it (a) has previously been registered or (b) is exempt from registration; (3) the stock for which appellant subscribed was not registered; and (4) it was not exempt from registration because (a) part of the first 50 per cent. of the stock first issued was issued to its promoters for preorganization services (b) the general statement required by section 883e-3 of the statute was not filed prior to securing appellant's subscription, and that such statement was not filed at any time.

Section 883e-3, Kentucky Statutes, which is a part of the act known as the "Blue Sky Law," in part reads:

"Except as hereinafter otherwise expressly provided, the provisions of this act shall not apply to any of the following classes of securities: * * *

"(i) Fifty per cent. (50%) of the capital stock first issued by a corporation organized under the laws of this state for the purpose of doing business in this state, to enable it to transact business under K. S. sec. 543 where no expense in excess of one per cent. of the proceeds from the sale of its capital stock so issued is incurred, and no commission, compensation or remuneration is paid or given for or in connection with the sale or disposition of such capital stock, and no part of the issue so disposed of is issued directly or indirectly in payment for patents, services, good will, trade marks, leases, copyrights, processes, formulæ, or other intangible assets. The president and secretary of the corporation shall, prior to such disposal, file with the commissioner a written verified statement setting forth the existence of the above facts, and that the corporation is formed for the purpose of doing business in this State."

Practically every question made by appellant is determined adversely to his contention in the case of Gannon v. Grayson Water Co., 254 Ky. 251, 71 S. W. (2d) 433, 434. In that case Gannon and another had subscribed for stock in a corporation. In suits to recover on their subscription, they interposed as one defense that the corporation had not complied with section 883e-3, subd. (i), or any other section of the Blue Sky Law. The opinion, after referring to the various sections of the statute invoked, said:

"Though the act provides that 'security' shall include 'pre-organization subscription,' it is at once apparent that, when subscriptions are taken prior to the filing of articles of incorporation, no method is provided for the registration of such subscriptions. Indeed, it is not seriously contended that the subscriptions which were made to an unnamed corporation to be thereafter formed should have been registered. But the point is made that, after

the organization of the corporation, it failed to register the subscriptions of the stock issued pursuant thereto.

"In this connection attention is called to the fact that 50 per cent. of the capital stock first issued by a corporation to enable it to transact business under section 543, Kentucky Statutes, is not exempt unless certain facts exist, and the existence of those facts is shown by. a written verified statement of the president and secretary of the corporation. Section 883e-3, Kentucky Statutes 1930. This view of the statute is correct, Smith v. Crawford, 228 Ky. 420, 15 S. W. (2d) 249, and it doubtless is true that, in the absence of the statement required of the president and secretary, even the first 50 per cent. of the capital stock sold by a corporation, or issued pursuant to subscriptions taken by the corporation after its articles of incorporation have been filed, is not exempt from the operation of the act. But we do not find in the section under consideration, or in any other provision of the act, any language compelling the conclusion that it is a violation of the statute for a corporation to issue without registration stock subscribed for before its articles of incorporation were filed. Such subscriptions are made, not on the faith of what has been done, but on the hope of what may be accomplished, and, being binding when taken, cannot be invalidated by the failure of the corporation after it is actually organized to register the subscriptions or the stock issued pursuant thereto, and furnish information which was not relied on in making the subscriptions. We therefore hold that the alleged noncompliance of the corporation with the provisions of the Blue Sky Law is no defense to these actions."

In the instant case there is no evidence that any commissions were paid or any expenses incurred in connection with the sale or disposition of the capital stock. After the corporation had been organized and officers and directors elected, the president and secretary filed with the securities commissioner a written, verified statement in substantial compliance with subdivision (i), section 883e-3, of the Statutes. It is admitted that appellant's subscription constituted a part of the first 50 per cent. of the capital stock first issued.

Even if appellant be correct in his contention that $700 of the capital stock issued to the Beams was for "services," it must not be overlooked that the authorized capital of the corporation was $150,000 and $77,500 had been subscribed for, or $2,500 more than 50 per cent. of its entire authorized capital. There is no evidence that the $700 stock in controversy issued to the Beams was a part of the first 50 per cent. Furthermore, appellant participated as a stockholder in the first meeting, and, after he had opportunity to acquaint himself with all the facts, his refusal to pay his subscription was based on the facts alleged in his amended answer. The question of noncompliance with the "Blue Sky Law" was raised for the first time in answer to the suit on his subscription. The Gannon Case, supra, clearly indicates that it was then too late for him to question the validity of his subscription.

Judgment affirmed.