**SPANN et al. v. STATE ex rel. McCLAIN COUNTY FREE FAIR ASS'N.**

No. 22765. Opinion Filed Sept. 15, 1931.

Rehearing Denied Oct. 20, 1931.

Purman Wilson, Co. Atty., R. G. Stevens, Asst. Co. Atty., and Roy Glasco, Special Counsel, for plaintiffs in error.

L. T. Cook, and George Bingaman, for defendant in error.

KORNEGAY, J. This is a proceeding in error to set aside an order granting a mandamus to compel the excise board of McClain county to make a levy for a "free fair." Statement of facts as made by plaintiffs in error is as follows:

"This was a mandamus action commenced in the district court of McClain county, Okla., by the plaintiff against the defendants to compel the defendants, as the excise board of McClain county, Okla., to make a levy of one-fourth of one mill for the purpose of defraying the expenses of holding county and township fairs in said county.

"The plaintiff, acting under chapter 38 of Session Laws of Oklahoma, 1925, had prepared and caused to be published and filed with the excise board an estimate of the needs for the fiscal year beginning July 1, 1931, and ending June 30, 1932, for the purpose of defraying the expenses of holding county and township fairs in said county. The excise board had prior to the commencement of this action struck from the esti-

mated needs of the county of McClain the entire estimate for county and township fairs. It is conceded that the amount requested by the plaintiff is considerably more than the levy of one-fourth of one mill would raise upon the valuation of all taxable property in McClain county. A trial was had and the court held that the defendants were required to make a levy upon the estimate of the fair board for the full one-fourth of one mill, and that the defendants had no discretion except in reducing the estimate to one-fourth of one mill.

"The plaintiff, in its petition for the writ of mandamus, alleged its own organization under the statute and the official position of the defendants and the making and publishing of the financial statement of the estimated needs of the plaintiff for the fiscal year beginning July 1, 1931, and ending June 30, 1932, and that the excise board had, on the 3rd day of August, 1931, completely disallowed the estimate for county and township fairs and refused to make any levy for such purposes; that the plaintiff further alleged in the fifth paragraph of its petition as follows:

" 'That by the laws of the state of Oklahoma, and under section 8 of chapter 38 of Session Laws of Oklahoma, 1925, it is made a plain and mandatory duty of the excise board, for the purpose of defraying the expenses of holding county and township fairs, to make an annual levy upon all taxable property in the county of not exceeding one-fourth of one mill per annum, which said levy is declared not to be a current expense, and to be a special purpose, known as a "Free Fair Fund," in addition to the maximum levy for current expenses now provided by law; but that said county excise board, in absolute disregard of their plain mandatory, statutory duty, failed, refused, and neglected to make said levy as provided by law and openly stated that they would not make any levy whatever for the purpose of holding county and township fairs as provided in chapter 38 of the Session Laws of 1925; and that said defendants still refuse so to do.'

"Plaintiff further alleged in its petition that it had no adequate remedy at law and prayed for a peremptory writ of mandamus requiring the defendant to make a levy of not exceeding one-fourth of one mill for county and township fairs.

"The defendants filed an answer which is as follows:

" 'Comes now the defendants and for their answer to plaintiff's petition herein, allege and state:

" 'That they deny generally and specifically each and every allegation in said petition contained except such as are hereinafter specifically admitted to be true.

" 'That the defendants admit the allegations contained in paragraphs 3 and 4 of plaintiff's petition.

" 'That defendants could not allow the estimates made for the free fair fund and make a levy of one-fourth mill therefor and allow the estimates made for other county purposes without exceeding the limit of eight mills provided by the Constitution of the state of Oklahoma as the maximum for all purposes; that some of said estimates made for county purposes had to be disallowed in order to reduce the levy for all county purposes to the constitutional limit of eight mills, and the defendants state that it was in their discretion to say which of the estimates made should be disallowed, and they in good faith believe that it would be for the best interest of the county to disallow the levy for one-fourth mill for the free fair fund, rather than disallow the estimates for other county purposes, and they in good faith believe that the estimates made for other county purposes were more necessary than the levy for the free fair.

" 'That the defendants deny that, under section 8, ch. 38 of Session Laws of Oklahoma of 1925 that it is made their plain and mandatory duty to make an annual levy upon all taxable property in the county of not exceeding one-fourth of one mill per annum for the county and free fair fund, and in this connection defendants state that the holding of township and county fairs is a matter of purely local concern to the county of McClain and the townships thereof and is a matter in which the state at large has no interest, and that if the Legislature of Oklahoma intended by section 8 of ch. 38 of Session Laws of Oklahoma 1925, to make it the mandatory duty of the defendants to make a levy for the purpose of defraying the expenses of holding county and township fairs, that said statutes would be unconstitutional and would violate section 20. art. 10 and section 9, art. 10 of the Constitution of the state of Oklahoma.

" 'The defendants further state that no estimate for the purpose of defraying the expenses of holding county and township fairs has ever been certified to the excise board by the board of county commissioners of McClain county, Okla., but, on the other hand, the items for the county and township free fair was stricken from the estimate by the board of county commissioners.' (C.M. pages 17, 18.)

"The journal entry of the order of the court allowing the peremptory writ of mandamus is as follows:

" 'Upon the hearing of this cause on the 12th day of August, 1931, upon the petition for a writ of mandamus herein, and the answer of the defendants herein, and the plaintiff appearing by its attorneys, Cook & Bingaman, and the defendants appearing in person and by their attorneys, Purman Wilson, county attorney of McClain county, and

R. G. Stevens, assistant county attorney of McClain county, and Roy Glasco, and both sides announcing ready for trial, and from the evidence which was submitted to the court, the court finds the issues of law and fact in favor of the state of Oklahoma ex rel. the McClain County Free Fair Association, the relator and against the defendants,

"'It is therefore considered, ordered, adjudged, and decreed by the court that a peremptory writ of mandamus issue against the said P. R. Spann, M. E. Riddell, and J. M. Tuggle, being the duly appointed, qualified, and acting county excise board in and for the county of McClain, Okla., commanding them and each of them to forthwith, upon receipt of the equalized values of all the taxable property of McClain county for the current fiscal year, make a levy upon all the taxable property in McClain county, Okla., for the fiscal year beginning July 1, 1931, sufficient to raise a free fair fund in accordance with the estimate submitted to said McClain county excise board by the executive board of the McClain county Free Fair Association, said fund to be for the purpose of holding free, county, and township fairs in McClain county, Okla., and said levy to be not exceeding one-fourth of one mill upon the taxable property in McClain county, Okla., and that the defendants pay the costs of this action.

" 'To which ruling and judgment of the court, the defendants object and except and exceptions are by the court allowed.' (C.-M. pages 33, 34).

"It is not exactly clear from the above journal entry that the trial court required the defendants to make a levy of the entire one-fourth of one mill, but this is the construction placed on the order by the court and counsel for plaintiff, and I feel that counsel for plaintiff will take the same position in this court.

"Defendants filed a motion for a new trial which was overruled by the court on August 18, 1931, and the defendants lodged their appeal in this court on August 25, 1931."

The counterstatement is as follows:

"The statement of the case submitted by plaintiffs in error in their brief is substantially correct with the exception of the statement that the judgment of the lower court required the excise board to make a levy of one-fourth of one mill. The judgment of the lower court, as shown at pages 33 and 34 of the case-made, and as shown on page 4 of the brief of the plaintiffs in error, shows plainly that the order of the lower court was that the excise board make a levy for a fair fund, in accordance with the estimate submitted to them by the free fair board not to exceed one-fourth of one mill. Hence, it is plainly seen that the judgment of the lower court did not specify or require a levy of one-fourth of one mill or any other particular millage

levy. With this exception, we think that the statement of the case by plaintiffs in error is substantially correct."

Plaintiff contends that section 8 of chapter 38, Session Laws of 1925, conflicts with section 20 of article 10 of the Constitution, and is void. This section is as follows:

"Section 8. That section 3655, Compiled Oklahoma Statutes, 1921, be and the same is hereby amended to read as follows:

" 'Section 3655. For the purpose of defraying the expense of holding county and township fairs as herein provided, the excise board of each county shall make an annual levy upon all taxable property in the county, of not exceeding one-fourth (¼) of one (1) mill per annum, which is hereby declared not to be a current expense and to be for a special purpose, known as the "Free Fair Fund," in addition to the maximum levy for current expenses now provided by law'."

The section of the article in the Constitution is as follows:

"Sec. 20. Local authorities may assess and collect taxes. The Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes."

Several cases are cited and liberally quoted from to sustain the position that a "free fair is a matter of local concern." Arguments are made on the one side that the purpose of the "free fair" is educational and therefore of state-wide concern, while, on the other side, it is urged that the actual result is that it is for amusement. Between these two contentions we will not undertake to decide. The dividing lines are so commingled that it is hard to tell, with any abiding assurance, where education begins and amusement ends in the complexities of modern life, and the constant demands of one class for "more leisure," while another class is crying for an opportunity to work and procure the means with which to live. If the reasoning of Justice Cooley, the author of the greatest work we have on constitutional law, is to be followed, as he reasoned the matter, as follows, in the case of People ex rel. Park Commissioners v. Common Council of Detroit, 28 Mich. 228, 15 Am. Rep. 202:

"Whoever insists upon the right of the state to interfere and control by compulsory legislation the action of the local constituency in matters exclusively of local concern, should be prepared to defend a like interference in the action of private corporations and of natural persons. It is as

easy to justify, on principle, a law which permits the rest of the community to dictate to an undividual what he shall eat, and what he shall drink, and what he shall wear, as to show any constitutional basis for one under which the people of other parts of the state, through their representatives, dictate to the city of Detroit what foundations shall be erected at its expense for the use of its citizens, or at what cost it shall purchase, and how it shall improve and embellish a park or boulevard for the recreation and enjoyment of its citizens. The one law would rest upon the same fallacy as the other, and the reasons for opposing and contesting it would be the same in each case. And while it may be entirely possible that in any particular instance the interference would be beneficial to the person or the community whose rights are invaded, it is not to be overlooked that an interference to compel a person to submit to something for his own good, may be made use of as a precedent to compel him at some future time to submit to extortion and plunder. The law very properly draws a line between that which is admissible and that which is not, and it does not allow outside dictation in matters of purely local concern, for one very good reason, among others equally good, that the motive for outside interference will very likely be something besides a desire to do good to a community in which the parties interfering have no personal interest, unless of a merely sentimental nature, and whose burdens they are not to share, or enjoyments participate in. All such matters are left to those whose interests will prompt them to act with purdence, and who, because of their interest, and because they relate to matters that must come under their own view and observation, they are presumptively best qualified to decide upon. And while we do not question that where state interference has improperly been invoked in municipal affairs in this state, and state appointments have been made for municipal government, the motive has been correct and the appointments been of those who, on personal grounds, were wholly unexceptionable, it may not be improper to state, that in that sister state in which a like power has been most often exercised, and whose legislative precedents were cited on the argument, while the pretense always was that the interference was necessary to correct some local evil or promote some local good, the general result of a disregard of sound principle followed, and a system of corruption and disorder was introduced which it became at last appalling to contemplate. But as bad motives cannot render a constitutional law invalid, neither can good motives legalize usurpation"

—the matter, on general principles, is local.

When we examine the act itself, however, which is now in chapter 20, art. 2, C. O. S. 1921, except as it has been amended, we find that the object of the free fair is defined. An old section had in it the word "fruitculture," which is left out in the amendment. The amendments are as follows:

"Section 1. That section 3648, C. O., S. 1921, be and the same is hereby amended to read as follows:

" 'Section 3648. There may be organized in each county in the state of Oklahoma a county free fair association. The term "free fair," as used in this act shall be construed to mean township and county fairs where admission to the grounds and all exhibit buildings are free and where no charge is made for entering exhibits on which premiums are offered.' "

"Section 2. That section 3649, C. O., S., 1921, be and the same is hereby amended to read as follows:

" 'Section 3649. The object of free fairs shall be to promote agriculture, horticulture, livestock, and poultry raising, manufacturing, arts, trades, and every industry of the county in which the fair is held.' "

Section 3658, C. O. S. 1921, is as follows:

"3658. Grounds and buildings free. The executive board of the County Fair Association shall not estimate cost of grounds and buildings for township and county fairs, and the executive board may arrange for holding the fair in any town or city in the county that will furnish grounds and buildings free."

That section has been amended to read as follows (sec. 11, ch. 38, S. L. 1925):

"Section 11. That section 3657, C. O. S. 1921, be and the same is hereby amended to read as follows:

" 'Section 3658. The executive board of the county fair association shall not include in their estimate the cost of grounds and buildings for township and county fairs, and the executive board may arrange for holding the fairs where suitable grounds and buildings will be provided free.' "

Applying the provisions of the Constitution of this state and the statutes creating the county fair and the township fairs, and the wording of the law, it appears that in the mind of the Legislature the matter was local. It so defines it. It further appears that the Legislature did not have in mind the compulsion of any county to hold a free fair, but necessarily must have left it, and did leave it, to the constituted authority of the respective counties. There is nothing in the act to indicate anything else.

Under the Constitution, the Legislature could permit the local authorities to levy taxes for this purpose, but it could not compel them. In other words, the author-

ity was a permissive one, as distinguished from a compulsory one. By referring to our Constitution and its general scope and provisions, it will be found that local self-government was practically the watchword of the hour when that Constitution was formed, and it contains more provisions guaranteeing local self-government than any other Constitution in the Union.

There is found an annotation of the case of State of Nebraska ex rel. Metropolitan Utilities District v. City of Omaha, decided by the Supreme Court of the state of Nebraska and reported in 46 A. L. R. 602. It contains a very extended discussion and exposition of the various constitutional provisions on the subject, our own included, as we have it embodied in section 20, art. 10. The parent case seems to announce the doctrine that, where the Legislature requires a certain thing to be paid for, the Legislature is levying the tax rather than the municipality. It then distinguished between purely municipal affairs and state affairs, it being the case of a city with governmental power, and holds that the statute requiring the levying of a tax to pay hydrant rentals did not violate section 7, art. 8, of their Constitution. One of the judges dissented from the opinion. The annotator begins at page 609 of 46 A. L. R., and carries the note through probably 100 pages or more. At page 612 the provisions of the Constitutions on the subject are cited, and the construing decisions. The wording is slightly different. Ours is very mandatory and says that the Legislature "shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may, by general laws, confer on the proper authorities thereof. respectively, the power to assess and collect such taxes." By no means does this give arbitrary power to the Legislature over the matter, but the positive requirement is that it shall not impose the taxes. Its deal'ngs with the county are to be permissive under that. The California Constitution is not as broad as this, because it defines the purposes. The Colorado Constitution is nearer the same, but it in turn qualifies the purposes. The Idaho Constitution is nearly the same, but they all differ in wording. Ours is the most positive of them all, and yet in the discussion of the matter, it appears that the Legislatures have no power under the holdings generally in a case like this. At page 617 of 46 A. L. R., the annotator, referring to our own decision Thurston v. Caldwell, 40 Okla. 200, 137 P. 683, relied on in this case, uses the following language:

"The Nebraska court said in Wilkinson

v. Lord (1909) 85 Neb. 136, 24 L. R. A. (N. S.) 1104, 122 N. W. 699, that the court was by a long line of decisions committed to the view that that part of Neb. Const. art. 9, sec. 6 (now art. 8, sec. 6), which provides that 'all municipal corporations, may be vested with authority to assess and collect taxes' for all corporate purposes, is not a limitation on the power of the Legislature. This statement seems to have somewhat misled the Oklahoma court in one case. Thurston v. Caldwell, 40 Okla. 206, 137 P. 638. See Neb. Const. art. 8, sec. 7 (formerly art. 9, sec. 7)."

Our own court has never directly passed on the question here directly invoked, but it came so near declaring in the case of Board of County Commissioners of Grady County v. Hammerly, 85 Okla. 53, 204 P. 445, that section 20, art. 10, meant what it said that that case can be cited as authority for that position as well as another part of the discussion here involved. At page 61, in the body of the opinion, a general dissertation on the subject is as follows:

"The framers of our Constitution recognizing the rights of free government and that the rights of personal liberty and private property should be held sacred, and that such government would not be free if the rights of property were left solely dependent upon the legislative body without any restraint, solemnly declared that taxes should not be levied or collected except by general laws and for public purposes only, and that the Legislature should not have the power to impose taxes for the purpose of any county, city, town, or other municipal corporation, but that should be done by the proper authorities of such counties, cities, towns, or other municipalities, respectively, under a general law of the state, and that the power of the levying and collection of such taxes should be delegated to the proper authorities of the respective counties and municipalities. State Constitutions are restrictions upon legislative power rather than a grant of such power, and when it declares how a right or duty may be exercised, the Legislature is without power to provide its exercise in some other way."

Again, on page 62, it is as follows:

"Section 20, art. 10 of the Constitution, specifically prohibits the Legislature from imposing taxes for any purpose of any county, city, town, or other municipal corporation, but the Legislature is empowered by general laws to confer such power upon the authorities of such county, city, or other municipality."

There is found in the brief of the plaintiffs in error a statement that plaintiffs below were not acting under official oaths, which we take to be true in view of the counterstatement, as follows:

"It seems preposterous to say that a fair board which has been elected by a mass meeting, the members of which have taken no oath of office and have made no bond as is required of other public officials, should be able to say to the county authorities, 'We demand the proceeds of a levy of one-fourth of one mill and it is none of your business how we use it.'"

Under the counter statement, we take it, therefore, that the parties who were making this estimate were not officers acting under the oath of our own Constitution or of the federal Constitution. To hold that on this estimate the excise board was compelled to make a levy in opposition to the will of the county commissioners, which as it appears in this case was attempted to be done, would be practically to shift the responsibility of county government and county expense from the persons who are elected and sworn to carry out this duty of acting on county expense, namely, the county commissioners and the excise board, all of whom appear to be officers of the law, and acting under their official oaths, and in their places to substitute a body not bound by such oaths, whose main interest in the matter is to create a fund at the expense of the taxpayers that they themselves could use.

We think that the Constitution, when it established county government, as it did, and provided for county commissioners, as it did in article 17, sections 1 and 2, as follows:

"Sec. 1. Each county, body politic. Each county in this state, now or hereafter organized, shall be a body politic and corporate."

"Sec. 2. Enumeration of county officers. There are hereby created, subject to change by the Legislature, in and for each organized county of this state, the offices of judge of the county court, county attorney, clerk of the district court, county clerk, sheriff, county treasurer, register of deeds, county surveyor, superintendent of public instruction, three county commissioners, and such municipal township officers as are now provided for under the laws of the Territory of Oklahoma, except as in this Constitution otherwise provided"

—meant what was said, and when at the same time the statutes defining the duty of county commissioners, which was to look after the fiscal affairs of the county, were brought over in the Schedule and still not repealed by the Legislature, these things are conclusive that the Legislature never intended to confer upon this board the arbitrary power to make an estimate which would have to be carried out to the extent of a quarter of a mill or anything else, as

against the wishes of the county commissioners or the excise board, both of which are objecting in this case.

Besides that, it appears that the county commissioners had already found it necessary to expend for other purposes, and purposes that are recognized everywhere as necessary for, not only the good of the county, but for the general welfare of the state, more than the ad valorem taxes would amount to, within the 8-mill limit of the Constitution. There are two exceptions in that Constitution by which a larger amount than 8 mills could be had independent of bonds. But this is not one of the exceptions. The language of the tax limit provision is as follows:

"Sec. 9. Total taxes on ad valorem basis —state levy—additional for schools. Except as herein otherwise provided, the total taxes, on an ad valorem basis, for all purposes, state, county, township, city or town, and school district taxes, shall not exceed in any one year 31½ mills on the dollar, to be divided as follows:

"State levy, not more than three and one-half mills; county levy, not more than eight mills; Provided, that any county may levy not exceeding two mills additional for county high school and aid to the common schools of the county, not over one mill of which shall be for such high school, and the aid to said common schools shall be apportioned as provided by law; township levy, not more than five mills; city or town levy, not more than ten mills; school district levy, not more than five mills on the dollar for school district purposes, for support of common school; Provided, that the aforesaid annual rate for school purposes may be increased by any school district by an amount not to exceed ten mills on the dollar valuation, on condition that a majority of the voters thereof voting at an election, vote for said increase."

It seems to be admitted in this case that either some of the other things required by the county commissioners would have to be stricken out to bring the levy within 8 mills or this would have to be stricken out. The county commissioners were opposed to this levy.

Whether the initiative and referendum provisions, providing that each county is entitled to the benefits of the initiative and referendum law, with reference to matters of this kind, are so far controlling that the Legislature could not make this mandatory upon the people of the county even within the 8 mills, it is not necessary to decide. Section 5 of article 5 is as follows:

"Sec. 5. Reserved to county and district —prescribed by general laws—power of coun-

ty commissioners in local matters—number of petitioners in county or district. The powers of the initiative and referendum reserved to the people by this Constitution for the state at large, are hereby further reserved to the legal voters of every county and district therein, as to all local legislation, or action, in the administration of county and district government in and for their respective counties and districts. The manner of exercising said powers shall be prescribed by general laws, except that boards of county commissioners may provide for the time of exercising the initiative and referendum powers as to local legislation in their respective counties and districts.

"The requisite number of petitioners for the invocation of the initiative and referendum in counties and districts shall bear twice, or double, the ratio to the whole number of legal voters in such county or district, as herein provided therefor in the state at large."

County government is largely left to the discretion of the county officers so long as they stay within the limits of the Constitution. As long as they follow the Constitution, they should not be disturbed. In order to maintain this mandamus, it would be necessary to hold that the provision of the Legislature about levying this one-fourth of a mill, instead of being permissive, was imperative, and if so, the act would appear to be unconstitutional. However, we should resolve the doubt in favor of the constitutionality of the act of the Legislature, if possible.

Viewing the act in establishing the free fair in its entirety, especially the declaration made by the Legislature as to the purposes of it and its locality, and furthermore leaving to the county commissioners discretion in the matter, and furthermore providing that the buildings should be furnished free by somebody, it is clear that the Legislature never intended that the free fair be fastened upon any county in the state whether it will or not. Clearly the Legislature recognized the right of the commissioners. The mandamus did not. Clearly the Legislature recognizes that the taxes should be levied by sworn officials and granted permission to the excise board so to do in a proper case.

We do not believe that a mere committee, such as this appears to be, could make up an estimate without the consent of the commissioners and expect the excise board to make the levy. Neither do we believe that the excise board, confronted with the problem of making a levy at the instance of such a board, when confronted with the proposition of its being bound by the constitutional limit, would have been justified in so doing. We do not believe that the court below, on the showing made, was justified in issuing the mandamus. The judgment not only compels the excise board to make the levy, but apparently says the cost of the action would have to be paid by the excise board, probably as individuals, if at all. We do not think the court had authority to render judgment at the instance of the fair board.

This cause, therefore, is reversed, with directions to the lower court to vacate its mandamus and dismiss the proceedings at the cost of the petitioners.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur.