**EXCISE BOARD OF LE FLORE COUNTY v. KANSAS CITY SOUTHERN RY. CO.**

No. 24698.    June 18, 1935.

Rehearing Denied July 16, 1935.

A. G. Windham, Co. Atty., and Varner & Varner, for plaintiff in error.

Joseph R. Brown and James B. McDonough, for defendant in error.

WELCH, J. This is an appeal by the protestee from a judgment of the Court of Tax Review sustaining the protest of the Kansas City Southern Railway Company against certain tax levies made by the excise board of LeFlore county for the fiscal year ending June 30, 1933.

The protest first involves that portion of the levy for the county sinking fund, included therein for the purpose of paying four judgments taken against the county on warrants drawn against the appropriation for the county "free fair fund" of LeFlore county in the manner provided by law. The warrants sued on were not paid, for the reason that a sufficient amount of taxes levied for that purpose was not collected. The warrants were legally issued within an appropriation made for that purpose.

The plaintiff in error contends that the indebtedness evidenced by the warrants so issued was and is an obligation for which the county was legally liable; that the Court of Tax Review erred in holding that the judgments therefor were void, and that the levy for the payment of the same was illegal.

Section 8, chapter 38, Session Laws 1925, section 8643, O. S. 1931, authorizes a levy for free fair purposes of not more than one-fourth of one mill in excess of the maximum amount allowed. counties for current expenses under section 12669, O. S. 1931 (section 9692, C. O. S. 1921). The levy for county free fairs is similar to a levy for boys' and girls' homes under section 2, chapter 161, Session Laws 1925; a levy for tubercular patients under section 5281, O. S. 1931; a levy for separate schools under section 12677, O. S. 1931; and a levy for highway funds under section 10163, O. S. 1931. All such levies are made upon all of the taxable property of the county. Alford v. Bonaparte, Co. Treas., 125 Okla. 164, 256 P. 935.

In St. Louis-San Francisco Railway Co. v. McIntosh, Co. Treas., 103 Okla. 246, 229 P. 1064, it was held that a county levy for a county free fair fund is a part of the current expense of the county. In Spann et al. v. State ex rel. McClain County Free Fair Ass'n, 152 Okla. 60, 3 P. (2d) 861, it was held that a levy for a county free fair fund could only be made with the consent of the board of county commissioners. From these authorities we find and hold that the indebtedness incurred by reason of the issuance of the county free fair warrants was a county indebtedness. American State Bank of Boynton v. Board of Com'rs of Muskogee County, 143 Okla. 1, 286 P. 902.

Attention is called to the decision of this court in Canadian County et al. v. Burgess et al., 153 Okla. 294. 5 P. (2d) 752, and it is contended that under the rule therein stated the county is not liable. In this case

this court was reviewing an award of the State Industrial Commission wherein Canadian county and the county fair association were each held liable to the claimant for an injury which he received while engaged in unloading flooring to be placed in a building to be used by the county fair association for exhibit purposes. In considering the relation existing between the county and the county fair association, this court said:

"It is contended by the claimant that on account of the fact that a levy may be made by the excise board of the several counties, that such levy constitutes a fair association as an agency of the county. We do not agree with this contention. The fair association is organized and managed through the method pointed out by the statute.

"The members of the county fair association have their own officers separate and apart from that of the county. A mere authorization for a tax levy to assist the corporation to carry on its affairs does not make the fair association an agency of the county. We, therefore, hold that the county was not liable to the claimant."

The fact that this court therein held that a county fair association is not an agent of the county so as to make the county liable under the provisions of the Workmen's Compensation Act, was in no wise a holding that the county is not liable for warrants issued against the county free fair fund. Under the decisions hereinbefore cited, the county is liable for separate school warrants issued by an independent school district, but that holding does not make the county liable for the torts of the independent school district. County free fair associations are organized under authority of law for county purposes, and they are financed under the authority of section 9, article 10, of the Constitution as a part of the county expense. We must bear in mind that we are here dealing with the law prior to the 1933 voted amendment to article 9 of the Constitution. The county is liable for the amount of the legal warrants issued against the valid appropriation for county free fair purposes, and the judgment rendered on the warrant was a valid judgment.

The judgment of the Court of Tax Review sustaining the protest as to that item of the protest is reversed, and the cause is remanded, with directions to the Court of Tax Review to restore the levy as made by the county excise board, and to deny that part of the protest.

Another item of the protest was for that portion of the levy which was made for the purpose of paying a judgment against the county rendered in favor of the American Indian Oil & Gas Company for gas furnished for heating the courthouse, including the county jail, which was a part thereof, and for cooking food for the prisoners confined in the county jail.

The judgment roll affirmatively shows that there was no estimate or appropriation made for furnishing gas to the county courthouse for the fiscal year in question. The petition showed that no appropriation had ever been made for that purpose. The petition did not allege that an appropriation was made, that the indebtedness incurred was not in excess of the income and revenue provided for that purpose, or that it was authorized by a vote of the people. These were necessary allegations in order to state a cause of action. Faught v. City of Sapulpa, 145 Okla. 164, 292 P. 15. The validity of a judgment against a political subdivision of the state must be determined from the judgment roll, and the judgment may be attacked collaterally if shown thereby to be void. Faught v. City of Sapulpa, supra. The judgment roll shows that no estimate or appropriation was made for furnishing gas. In Protest of Kansas City Southern Ry. Co., 157 Okla. 246, 11 P. (2d) 500, this court held:

"Where it is sought to recover a judgment against a municipality on a claim ex contractu, the provisions of section 26, article 10, of the Constitution stand as a bar to the recovery of the judgment thereon until it is pleaded and admitted or proved that the indebtedness sued on was not contracted in violation of those provisions."

The plaintiff in error contends that it was the duty of the board of county commissioners, under section 7668, O. S. 1931, to provide fuel; that upon its failure to do so the court could order same furnished by the sheriff, and that the expenses incurred would be a proper charge against the county, under the holding in Smartt, Sheriff, v. Board of Com'rs, 67 Okla. 141, 169 P. 1101. That is true in so far as an expense incurred comes within the rule announced, but the record in the instant case shows quite a different state of facts. In that case an appropriation had been made which was found to be insufficient. In that case the court went no further than to hold that:

"Moneys lawfully expended by a sheriff in the feeding of prisoners and fees earned by him in the discharge of duties imposed upon him by the Constitution and laws of the state constitute a valid charge against

the county and are not within the limitations imposed upon the county by section 26, art. 10 (section 291, Wms. Anno.), Constitution."

There is nothing in that decision tending to sustain the judgment rendered in favor of the American Indian Oil & Gas Company on contract. When that company contracted with the county and sold gas to the county it knew or could have known there was no appropriation from which the county could pay. This court has repeatedly held that a person who deals with a county does so with notice of the legal limitations on the county, and upon the officers who are agents of the county, and that any liability sought to be incurred or established by contract, express or implied, in excess of or in absence of appropriation, has no validity.

See section 5955, O. S. 1931, and O'Neill Engineering Co. v. Inc. Town of Ryan, 32 Okla. 738, 124 P. 19; Fairbanks-Morse Co. v. City of Geary, 59 Okla. 22, 157 P. 720; Lacy v. Board of Education, 98 Okla. 237, 224 P. 712; Threadgill v. Peterson, 95 Okla. 187, 219 P. 389; Wood v. Phillips, 95 Okla. 255, 219 P. 646; Myers v. Independent School District, 104 Okla. 51, 230 P. 498; Eaton v. St. Louis-S. F. Ry. Co., 122 Okla. 143, 251 P. 1032; Board of Commissioners v. Western Bank & Office Supply, 122 Okla. 244, 254 P. 741; In re Gypsy Oil Co., 141 Okla. 291, 285 P. 67; Protest of Carter Oil Co., 148 Okla. 1, 296 P. 485; Graves v. Board of Com'rs Cimarron County, 170 Okla. 282, 39 P. (2d) 532.

The judgment roll shows that the claim was void under the provisions of section 26, article 10, of the Constitution. For the reasons stated, the judgment was void and the excise board was without authority of law to include the same in the levy for sinking fund purposes.

The judgment of the Court of Tax Review sustaining the protest with reference thereto is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, PHELPS, CORN, and GIBSON, JJ., concur. BAYLESS, J., absent. BUSBY, J., dissenting in part.

BUSBY, J. (dissenting in part). I am unable to agree with that portion of the majority opinion which holds that the judgment rendered by the district court of Le Flore county in the case of American Indian Oil & Gas Co. v. Board of County Commissioners (district court No. 7956) is void and subject to collateral attack. This dissent is directed entirely at that portion of the opinion.

In my judgment the practical and legal effect of the majority opinion is to hold that a judgment of a court of competent jurisdiction from which no appeal has been taken **is void if an examination of the judgment roll reflects that such court erroneously decided an issue of law submitted to it.** Such a result makes the solemn and final decision of a court on an issue of law a mere expression of opinion.

The purpose of a court is to settle disputes. Judgments are the means by which this purpose is accomplished. The settlement of a controversy as expressed in the judgment of the court may involve the determination of either issues of law or fact, or both. Generally, both classes of issues are involved, since a decision of a controversy requires the application of the law to the facts in the case. In order to apply the law, the court must necessarily determine what it is. If the decision of a court on an issue of law is erroneous, the method of correction by appeal is usually provided. If such method is not pursued, the judgment becomes final. An attack in a manner not provided by law on a judgment after it has become final is collateral and the scope of inquiry on such attack is limited to jurisdictional grounds.

In recognizing the sanctity and finality of judgments, certain well-defined principles and rules governing cases of collateral attack and limiting the field of inquiry in such cases have been recognized, established, and applied by the courts. As I view this case, the result announced in the majority opinion arises from a misapplication of some of those rules and a failure to recognize and apply others.

Hereinafter I shall call attention to specific and well-recognized principles and rules the application of which, under my view of the law, should have led to a different conclusion from that announced by the majority of this court. As a basis for further discussion, I shall supplement the statement of facts contained in the majority opinion.

In the trial of this case before the Court of Tax Review, in which the district court judgment was collaterally attacked, the judgment roll, consisting of petition, summons, answer, and judgment, was introduced in evidence. The judgment roll shows that the plaintiff filed its petition in the district court on the 2nd day of September,

1931, and caused summons to be issued and served upon the board of county commissioners in the manner required by law, and that, thereafter, the defendants filed an answer consisting of a general denial. The journal entry of judgment reflects that the cause was tried by the court, both parties appearing there and being represented by counsel; that evidence was introduced, and the judgment was rendered for the plaintiff for the sum of $320.71, with interest thereon, being the amount alleged by the plaintiff in the petition to be due.

The petition reveals that the plaintiff in the district court action brought its suit upon the theory that the furnishing of gas to provide heat in the county courthouse and in the jail is essential to the maintenance of constitutional county government; that at the beginning of the fiscal year 1931, ending June 30, 1931, an appropriation was made out of which such gas could be paid for, and that such appropriation became exhausted during the month of January, 1931, and that thereafter the plaintiff continued to furnish gas, by reason of which the amount sued for became due and payable. It was manifestly the plaintiff's theory that since, as it alleged, the gas furnished was necessary for maintenance of constitutional county government, the limitations prescribed by section 26, art. 10, of the Constitution should not apply.

The theory of the plaintiff in submitting its cause for judicial determination by the district court is clearly expressed in the following excerpts from its petition. It is therein alleged:

"That said board of county commissioners under the provisions of the Constitution and laws of the state is charged with the duty of providing a county courthouse building for the purpose of transacting therein the business of the county and with furnishing the necessary supplies and equipment therein which are necessary for the orderly transaction and conduct of the business of the county and among which necessaries are light, heat, water, and means of telephone communication in connection with the orderly transaction of the business had and done between the county officers of said county and the public, and which is required to be done and performed under the laws of the state of Oklahoma. * * *

"Plaintiff states that during the fiscal years prior to the fiscal year ending June 30, 1931, all gas furnished to defendant was paid for each month from a fund designated as the general government fund from which the ordinary current expenses necessary and incidental to the carrying on of the county

business were paid. That the gas furnished to the defendant and used for the purposes above mentioned during the last six months of the fiscal year ending June 30, 1930, and during the month of January, 1931, was paid for out of said funds, but the said fund was then exhausted and there was no fund from which to pay for the gas furnished and used for said purposes during the remaining months of the fiscal year ending June 30, 1931. * * *

"Plaintiff states that the gas contracted for and purchased by the said board of county commissioners for heating and cooking purposes was obligatory and mandatory on the part of the said board and the expense incurred in connection therewith was one incident and necessary to the governmental powers of the county and the amount to be expended for such purposes is not limited by any particular appropriation and is therefore a proper charge against the said county to be incurred from day to day in connection with the transaction of the business of said county."

It is self-evident that the district court concluded as a matter of law that the theory upon which the plaintiff presented its case was sound and that the gas furnished was essential to the maintenance of constitutional county government, and that by reason of that fact the specific limitation contained in section 26, art. 10, of the Constitution did not preclude a recovery. The majority opinion holds that the district court was in error in its findings, and that, since the holding was erroneous, the judgment is void because the error of law appears on the face of the judgment roll.

For the purpose of this discussion and in order to narrow the issues, I shall assume that the decision of the district court was erroneous as a matter of law, but I can neither assume nor agree that the commission of such an error renders the judgment void when no appeal has been taken and the same is attacked collaterally.

Controlling importance is attached in this case to the following provisions of section 26, art. 10, of the Constitution:

"No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof. * * *"

If the above-quoted constitutional provision, under the decisions of this court, constituted an absolute bar to the recovery of any judgment in excess of the income and

revenue provided for a given fiscal year, an entirely different question would be presented from that which confronts us in this case. It might then well be said that, since this provision of the Constitution is one of absolute prohibition in the incurring of indebtedness, no court of the state has the power to inquire in a given case whether or not this constitutional limitation may be exceeded, and having no power of inquiry, it would have no power to decide in a given case that indebtedness could be incurred in excess of the limitation therein provided. But this court is not committed to such a doctrine. On the contrary, in the case of Smartt, Sheriff, v. Board of County Commissioners of Craig County, 67 Okla. 141, 169 P. 1101, this court definitely decided that the constitutional provision above quoted would not prevent the county from being liable for money expended and fees earned by the sheriff in discharging the duties of his office, even though the recovery exceeded the limitations expressed in such constitutional provision. The basis of that decision was the necessity that constitutional county government be maintained notwithstanding deficiencies in an appropriation. In the case of City of Durant v. Story et al., 112 Okla. 110, 240 P. 84, this court held that a city was liable for the payment of notices printed in connection with a paving procedure when the cost of such notices could not be charged to the paving district by reason of the fact that it was never created. This municipal liability was recognized by the court notwithstanding the fact that there was no estimate or appropriation made for the purpose, and notwithstanding the further fact that the liability was created by contract in order to perform a duty enjoined by statute.

In the case of Protest of Cities Service Gas Co. et al., 162 Okla. 131, 19 P. (2d) 546 (opinion prepared by Justice Swindall), this court announced the following law in paragraphs 4 and 5 of the syllabus:

"When an appropriation has been made for the performance of constitutional governmental functions and by reason of unforeseen conditions the appropriation so made is insufficient, it is the duty of the officers charged with the performance of those duties to apply to the tax officials for a supplemental appropriation for that purpose, and a supplemental appropriation therefor should be made, although it requires the transfer of funds from unexpended appropriations theretofore made for other purposes.

"In the event there are no funds from which such a supplemental appropriation may be made, the rule stated in Smartt, Sheriff v. Board of County Commissioners of Craig County, 67 Okla. 141, 169 P. 1101, L. R. A. 1918C, 313, applies, subject to the limitations contained in section 9, art. 10, of the Constitution as to the maximum rate of ad valorem taxation."

From a review of the foregoing authorities, it is apparent that we have definitely recognized that there is a class of cases in which indebtedness can be incurred in excess of the limitations prescribed in section 26, art. 10, supra. In general, we have said that that class of cases is where the facts show that the indebtedness incurred is essential to the maintenance of constitutional government. It necessarily follows that when any case alleged to fall within this class is presented to a court, that court must decide whether the indebtedness incurred is essential to the maintenance of constitutional government before it can properly decide that a municipality or county is liable in excess of its provided income and revenue. The question is one for judicial inquiry. If the court has the power to inquire, it must have the power to decide. Even though its decision is erroneous, it becomes final if not appealed from. Neither this court nor any other court should declare the judgment void on collateral attack merely because we entertain a different view as to what the decision should have been. Thus the test of jurisdiction is whether the court had power to enter upon the inquiry, not whether its conclusion was right or wrong. Board of Com'rs of Lake County v. Platt, 79 F. 567: New Dunderberg Min. Co. v. Old et al., 79 F. 598. Judgments cannot be attacked collaterally merely because they include items which another court might hold illegal. Reed et al. v. Nicholson et al. (Mo.) 59 S. W. 977. As this court said in Re Protest of St. Louis-San Francisco Ry. Co., 157 Okla. 131, 11 P. (2d) 189, speaking through Mr. Justice Swindall:

"In a collateral attack upon a judgment of a court of general jurisdiction, the inquiry is confined as to the jurisdiction of the court, and not whether the jurisdiction was properly exercised. Miller v. Madigan, 90 Okla. 17, 215 P. 742. The three jurisdictional elements entering into the validity of every judgment being first, jurisdiction of the parties, second, jurisdiction of the subject-matter, and, third, judicial power to render the particular judgment, which means jurisdiction of the particular matter which the judgment professes to decide."

In the case of Kehlier et al. v. Smith, 112 Okla. 183, 240 P. 708, we said in syllabus 1:

"In a collateral attack upon a judgment of a court of general jurisdiction the inquiry is confined to the jurisdiction of the court and not whether the jurisdiction was properly exercised."

In the case of Abraham et al. v. Homer, 102 Okla. 12, 226 P. 45, we said:

"On collateral attack against the judgment of a court of record, when fraud is absent and all necessary jurisdictional facts existed in the court rendering the judgment attacked, the court on such collateral attack has no right to inquire, determine, and adjudge as to the existence in the original action of quasi jurisdictional facts or facts constituting a cause of action, and this is true even though upon the face of such judgment itself it appears that the court in the original action had erred both in fact and in law as to the existence of such facts and the right of the parties to the relief granted."

In commenting upon the above rule in the later case of Nolan v. Jackson, 107 Okla. 163, 231 P. 525, Mr. Justice Lydick, speaking for this court, said:

"There is a time and a place for the judicial determination of every disputed question affecting the affairs of men. By such determination we mean one that brings the dispute to an end. * * * Final judgments there rendered within the scope of constitutional jurisdiction are not to be treated as playthings to be tossed about, broken, and cast away as children play with toys."

The rule above quoted in Abraham et al. v. Homer was reiterated and approved in Matthews v. Morgan et al., 127 Okla. 74, 259 P. 867.

In the case of Foltz v. St. Louis-San Francisco Ry. Co., 60 F. 316, it was stated:

"Jurisdiction of the subject-matter is the power to deal with the general abstract question, to hear the particular facts in any case relating to this question, and to determine whether or not they are sufficient to invoke the exercise of that power. It is not confined to cases in which the particular facts constitute a good cause of action, but it includes every issue within the scope of the general power vested in the court, by the law of its organization, to deal with the abstract question. Nor is this jurisdiction limited to making correct decisions. It empowers the court to determine every issue within the scope of its authority according to its own view of the law and the evidence, whether its decision is right or wrong; and every judgment or decision so rendered is final and conclusive upon the parties to it, unless reversed by writ of error or appeal, or impeached for fraud. * * * (Citing cases). Wherever the right and the duty of the court to exercise its jurisdiction depend upon the decision of the question it is invested with power to hear and determine, there its judgment, right or wrong, is impregnable to collateral attack, unless impeached for fraud."

See, also, Board of Commissioners of Lake County v. Platt, supra.

So long as this court recognizes, as we now do, that there is a class of cases in which the limitations on indebtedness prescribed by section 26 of art. 10 of the Constitution may be exceeded for the maintenance of constitutional government, it appears to me that we should recognize some appropriate judicial tribunal as having the power to entertain original jurisdiction of cases against municipalities for the purpose of determining whether, as a matter of law, they properly fall within the class, and the decision of that tribunal should be recognized as final and binding unless an appeal is taken for the correction of the alleged errors in the decision. Otherwise, the litigants of this state who believe themselves entitled to relief have no judicial tribunal to which they can appeal for that relief with the expectation of having the decision of that tribunal treated as a settlement of the controversy.

To say that an erroneous decision on an issue of law renders a judgment void when collaterally attacked, is equivalent to saying that the court making the decision has no judicial power to decide the issue of law at all. If we deny this power to the trial courts of this state, we deny the citizens of this state any recourse to a court having judicial power to settle an issue of law in this character of case, for neither this court nor the Court of Tax Review can entertain original jurisdiction to grant the relief sought, nor can the successful litigant appeal from a favorable decision in the lower court.

In the case of Protest of Gulf Pipe Line Co. and also styled Seminole County et al. v. Gulf Pipe Line Co., 168 Okla. 136, 32 P. (2d) 42, the writer of this opinion, speaking for the court, endeavored to recognize and apply to tax protest cases the elementary rules governing collateral attack. I shall not lengthen this dissenting opinion by reiterating the principles therein assembled, but refer to those principles and the application thereof as expressed in that

case as applicable to the problem presented by the case at bar. I desire, however, to call particular attention to paragraph 3 of the syllabus as adopted by the majority of the court herein. In my judgment that syllabus, which was adopted from Protest of Kansas City Southern Ry. Co., 157 Okla. 246, 11 P. (2d) 500, is not only inapplicable to this case, but is an inaccurate statement of the law, inasmuch as it indicates that a plaintiff in suing a municipality must plead that the indebtedness on which he seeks to recover falls within the constitutional limitation.

In reviewing cases on appeal this court has repeatedly held that it is not necessary for the plaintiff to plead that his debt is within the constitutional limitation, that that limitation is not self-executing, and is a matter of defense. See State Bank of Miami v. City of Miami, 43 Okla. 809, 144 P. 597; Fabric Fire Hose Co. v. Town of Caddo, 59 Okla. 89, 158 P. 350; Oklahoma City v. Derr, 109 Okla. 192, 235 P. 218. These cases have not been overruled and stand as the law of this state. Why should we say that a petition is sufficient when reviewed on direct attack, but is insufficient on collateral attack?

The rule stated in syllabus 3 of the majority opinion is also incorrect in that it intimates that the absence of an allegation in the petition renders the judgment void on collateral attack. This subject was carefully treated in the case of Seminole County v. Gulf Pipe Line Co., supra, and need not be reconsidered in this dissent.

There is another matter which to me presents a problem for serious thought and consideration. In the proceedings before the Court of Tax Review the judgment creditor is not even made a party. Neither does he become a party to the proceeding when an appeal is taken to this court from a decision of the tax court. Yet his rights are materially affected by that decision. In fact, his judgment may be destroyed thereby. Thus the judgment creditor has neither notice nor opportunity to be heard. In at least two cases the federal court has decided that in so far as the decision of the Court of Tax Review, or other court in a tax protest case, purports to affect the rights of a judgment creditor, it fails to meet the requirements of due process of law. See Bristow Battery Co. et al. v. Payne, Co. Treas., 123 Okla. 137, 252 P. 423. See Board of Com'rs v. Bristow Battery Co., 28 F. (2d) 195; St. Louis-San Francisco Ry. Co.

v. Blake, Co. Treas., 36 F. (2d) 652. In the Bristow Battery Case, decided by the federal court, that court treated as a nullity the decision of this court in the case of Bristow Battery Co. et al. v. Payne, Co. Treas., 123 Okla. 137, 252 P. 423.

It will thus be seen that without giving the judgment creditor an opportunity to be heard, we are, in this case, deciding that his judgment is void because we entertain a different view of the law than did the district court to which he presented his case and in which he obtained a final judgment.

In my opinion, respect for the courts and their decisions on the part of the citizenship demands that we treat as final and conclusive the decisions of trial courts upon issues of law where such courts have the authority to inquire into the issues, regardless of whether the decision was right or wrong, and even though the error in deciding the issue of law may be reflected upon the face of the judgment roll.

For the reasons stated, I respectfully dissent.